# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF IDAHO

_____

**In Re**

PAUL PFANKUCH and
BONITA PFANKUCH,

**Debtors.**

**Bankruptcy Case
No. 07-01469-JDP**

_____

## MEMORANDUM OF DECISION

_____

**Appearances:**

> Kimbell D. Gourley, TROUT JONES GLEDHILL FUHRMAN, Boise, Idaho, Attorney for Chapter 13 Trustee John H. Krommenhoek.
>
> Jeremy J. Gugino, Boise, Idaho, *pro se*.

### *Introduction*

Jeremy J. Gugino ("Gugino"), the chapter 7[1] trustee in a related bankruptcy case, filed a "Motion for Administrative Claim under § 503(a)"

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101 - 1532, and all rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001 - 9037.

MEMORANDUM OF DECISION - 1

in this case. Docket No. 64. The chapter 13 trustee in this case, John H. Krommenhoek ("Krommenhoek"), objected to the motion. Docket No. 67. Following an evidentiary hearing on the motion, the Court invited the parties to file additional arguments, and deemed the issues under advisement. After careful consideration of the record, the parties' arguments, and the applicable law, the Court concludes the motion must be denied.[2]

*Facts*

In 1999, Boise Mall, L.L.C. (the "Mall") leased space in the Boise Town Square Shopping Center to Jeff Blackwell Enterprises ("Blackwell"). Blackwell used the space to operate a business known as "Courtside Delicatessen." On August 22, 2003, with the consent of the Mall, Blackwell assigned all of its right, title, and interest in and to the lease to Pfankuch Food Services, Inc. (the "Corporation"). At that time, Paul and Bonita Pfankuch (the "Pfankuchs") were the owners and sole shareholders of the

---

[2] To the extent required by the Rules, this Memorandum constitutes the Court's findings of fact and conclusions of law. Rules 9014, 7052.

MEMORANDUM OF DECISION - 2

Corporation. In connection with that assignment, the Pfankuchs executed an absolute guaranty in favor of the Mall, agreeing that, if the Corporation failed to do so, the Pfankuchs would pay all amounts due to the Mall under the lease. Following the assignment, the Pfankuchs began operating their own delicatessen in this leased space.

In 2007, the Corporation fell behind on its lease payments to the Mall. Beginning as early as April, 2007, the Mall sent various demands for payment to the Corporation and the Pfankuchs. On June 20, 2007, the Pfankuchs paid the Mall $12,829.15 by making a draw on their personal credit card account to satisfy past due rent owed under the lease.

On September 17, 2007, the Corporation filed for relief under chapter 7 of the Bankruptcy Code.[3] Gugino was the trustee in that case.[4] The following day, September 18, 2007, the Pfankuchs filed a chapter 13

---

[3] Case No. 07-01465-TLM.

[4] On September 9, 2008, the Court approved Gugino's report of no distribution, and closed the estate.

MEMORANDUM OF DECISION - 3

petition,[5] and Krommenhoek was appointed to serve as trustee. The $12,829.15 payment was disclosed on the Statement of Financial Affairs in the chapter 7 bankruptcy case, but no mention was made of the payment in the filings associated with the chapter 13 case.

After completing several hours of research, Gugino eventually made a demand upon the Mall to recover the June 20, 2007 payment as a preference in the chapter 7 bankruptcy case. The Mall, while conceding the payment was avoidable, was aware that the Pfankuchs were also in bankruptcy, and expressed concern about which trustee was entitled to the avoided transfer. Gugino, Krommenhoek, and the attorney for the Mall, agreed that the $12,829.15 would be sent to Gugino to be held in trust until a determination as to which estate was rightfully entitled to the funds could be made.

Unable to settle the issue, Krommenhoek sued Gugino[6] seeking a declaratory judgment that the funds belonged to the Pfankuch bankruptcy

---

[5] Case No. 07-01469-JDP.

[6] Adv. Proc. No. 08-6005.

MEMORANDUM OF DECISION - 4

estate, and an order requiring Gugino to turn over the funds. Both trustees moved for summary judgment; on July 15, 2008, the Court entered its decision, and on July 22, 2008, its judgment, declaring that the Pfankuch bankruptcy estate was entitled to the funds and ordering Gugino to deliver $12,829.15 to Krommenhoek.

On August 11, 2008, Gugino filed this motion seeking permission to file an administrative expense claim. Gugino alleged that because of the services he rendered in recovering the preferential payment, he is entitled to an administrative expense claim of $160.[7] In the alternative, Gugino requests the maximum compensation allowed under § 326, or $2,157.92.

*Discussion*

Two issues must be resolved in disposing of Gugino's motion. First, the Court must determine whether Gugino's motion was timely filed, and if not, whether good cause exists to consider it now. Second, assuming the motion is properly before the Court, the merits of Gugino's request must

---

[7] Gugino alleges that he spent approximately two hours in researching, preparing a demand letter, and conversing with the Mall's counsel regarding return of the payment. He values his services at $80 per hour.

MEMORANDUM OF DECISION - 5

be examined to determine whether any statutory basis exists to support Gugino's administrative expense claim.

A.

The Bankruptcy Code provides that "[a]n entity may *timely* file a request for payment of an administrative expense, or may tardily file such request if permitted by the court for cause." 11 U.S.C. § 503(a) (emphasis added). In his motion, Gugino points to the latter portion of this clause and explains that by the time the adversary proceeding was adjudicated and it was determined which bankruptcy estate was entitled to the returned preferential payment, the claims bar date in this bankruptcy case had long since passed. But in making this argument, Gugino misunderstands the procedure and time frame in which to request allowance of administrative expenses.

"Administrative expense claims are to be distinguished from other claims against the estate for which a creditor must timely file a proof of claim under 11 U.S.C. § 501." *Hall Fin. Group, Inc. v. DP Partners Ltd. P'ship (In re DP Partners Ltd. P'ship)*, 106 F.3d 667, 672 (5th Cir. 1997). Rule

MEMORANDUM OF DECISION - 6

3002(c) provides that, in general, a proof of claim is timely if it is filed within ninety days of the first date set for the § 341(a) meeting of creditors.[8]  However, there is no similar rule or provision in the Code setting a deadline to file claims for administrative expenses.  As a result, bankruptcy courts may exercise discretion in setting administrative claim bar dates.  *Texas Comptroller v. Megafoods Stores, Inc. (In re Megafoods Stores, Inc.)*, 163 F.3d 1063, 1071 (9th Cir. 1998); *In re DP Partners Ltd. P'ship*, 106 F.3d at 672 (citing *3 Collier on Bankruptcy* ¶ 503.1, at 503-4 n. 2c (Lawrence P. King ed., 15th ed. 1994); *see also, In re Southern Soya Corp.*, 251 B.R. 302, 311 (Bankr. D.S.C. 2000); *In re Gurley*, 235 B.R. 626, 631-32 (Bankr. W.D. Tenn. 1999).

In this case, the Court has not established any deadline for filing administrative expense requests.  The Pfankuchs' amended chapter 13 plan was confirmed on December 14, 2007, but neither the plan nor the confirmation order make any mention of a bar date for administrative

---

[8] In this case, the § 341(a) meeting of creditors was set to occur on October 22, 2007, meaning that the last day to file a timely proof of claim under Rule 3002(c) was January 20, 2008.

MEMORANDUM OF DECISION - 7

expense claims. Shortly after confirmation of the Pfankuchs' plan, Krommenhoek sought and received Court approval to hire an attorney to pursue the adversary proceeding mentioned above. Krommenhoek and his counsel diligently prosecuted that action which resulted in a judgment in their favor on July 22, 2008. Less than three weeks later, Gugino filed the instant motion. In the exercise of its discretion, the Court finds that Gugino did not engage in unreasonable delay in filing his request, and the motion is therefore timely.[9]

---

[9] One procedural quirk remains, though. Although entitled "Motion for Administrative Claim under § 503(a)", and while the body of the motion identifies the amount of the claim that Gugino seeks to be allowed, the motion requests only permission to file an administrative expense claim at some later time. In response to the Court's inquiry at the hearing about this staged approach, Gugino explained that he understood that he first needed the Court's permission to proceed with his request for an administrative expense claim before urging the merits of that claim. Then, in his post-hearing brief, Gugino reiterated the amount of the claim he sought and requested that the Court "grant [Gugino's] motion for an administrative expense under § 503(b) in an amount it deems appropriate." Docket No. 71. While he disputes Gugino's entitlement to an administrative expense, it does not appear that Krommenhoek objects to reaching the merits of Gugino's claim under his present motion. In the absence of an objection, and in an attempt to conserve resources and to expedite a resolution, the Court considers the merits of Gugino's request below.

MEMORANDUM OF DECISION - 8

B.

Gugino argues that his efforts were instrumental in ultimately recovering the preferential payment from the Mall. Indeed, Gugino speculates that had he declined to inform Krommenhoek about the potentially avoidable transfer, Krommenhoek may not have discovered this asset. But even if that is so, "the fact that a benefit was conferred on or received by the [chapter 13 bankruptcy] estate does not alone or automatically justify allowance of an administrative claim." *In re Cent. Idaho Forest Prods.*, 317 B.R. 150, 154 (Bankr. D. Idaho 2004). Rather, a request for administrative expenses must be "evaluated and determined under the applicable provisions of the Bankruptcy Code." *Id.*

The burden of proving entitlement to an administrative claim is on the claimant. *In re Megafoods Stores, Inc.*, 163 F.3d at 1071. "While the Court has broad discretion to grant administrative expense requests, it is required to construe § 503(b) narrowly to keep costs to a minimum and preserve the limited assets of the bankruptcy estate for the benefit of unsecured creditors." *In re Cent. Idaho Forest Prods.*, 317 B.R. at 155;

MEMORANDUM OF DECISION - 9

*Microsoft Corp. v. DAK Indus., Inc., (In re DAK Indus., Inc.)*, 66 F.3d 1091, 1094 (9th Cir. 1995).

Gugino relies on § 503(b)(2) as statutory authority for his administrative expense claim. This provision permits the Court to award administrative expenses for "compensation and reimbursement awarded under section 330(a)." Section 330(a)(1) in turn provides:

> After notice to the parties in interest and the United States Trustee and a hearing, and subject to sections 326, 328, and 329, the court may award to *a trustee* . . . reasonable compensation for actual, necessary services rendered by the trustee[.]

11 U.S.C. § 330(a)(1)(A) (emphasis added). Gugino contends that the reference to "a trustee" in § 330(a) can be construed to refer to more than one particular trustee in any given bankruptcy case. Thus, he argues, that by virtue of his title as "a trustee," (albeit not the trustee serving in this case), the Code empowers the Court to allow his administrative expense claim.[10]

---

[10] At the hearing, the Court inquired whether, under § 503(b)(2), someone who was not a trustee could be allowed an administrative expense claim for

MEMORANDUM OF DECISION - 10

Gugino's brief identifies a number of cases which, in his opinion, support his argument.[11] But upon close examination, all of these decisions involved a single bankruptcy case that had been converted from chapter 7 to chapter 13. In other words, in those cases, the former chapter 7 trustees sought and were awarded administrative expense claims for the services they rendered prior to conversion *in the same bankruptcy case*. Though the facts are different, Gugino relies upon the policy underlying these decisions to support his request here:

> It is unacceptable and unwarranted to penalize hard-working interim trustees whose services have contributed to the administration of the bankruptcy estate but who have not actually distributed funds by depriving them of fees even though successor trustees, whether in a case

---

supplying information to the case trustee that ultimately leads to recovery of a valuable asset. Gugino candidly conceded that such a person would not be entitled to an administrative expense claim. As a result of this concession, Gugino therefore clearly founds his entitlement to relief, not on the services he performed or any benefits he may have bestowed upon the chapter 13 estate, but instead, solely on his status as "a trustee" in "a bankruptcy case."

[11] *See, In re Kuhn*, 337 B.R. 668 (Bankr. N.D. Ind. 2006); *In re Hages*, 252 B.R. 789 (Bankr. N.D. Cal. 2000); *In re Rodriguez*, 240 B.R. 912 (Bankr. D. Col. 1999); *In re Moore*, 235 B.R. 414 (Bankr. W.D. Ky. 1999); *In re Berry*, 166 B.R. 932 (Bankr. D. Or. 1994).

MEMORANDUM OF DECISION - 11

> pending under the same chapter or converted to another chapter, are successfully able to make distributions to parties in interest.

*In re Rodriguez*, 240 B.R. at 915.

The Court appreciates these policy concerns, but only as far as they go. Chapter 7 cases are frequently converted to chapter 13 cases. *See* 11 U.S.C. § 707(b). Where there is but one bankruptcy estate to be administered, it makes sense to accommodate the pre-conversion chapter 7 trustee's right to recover, lest that trustee risk serving without compensation for valuable services rendered to the estate if the case converts.

But this is not the kind of case addressed by *In re Rodriguez* and the others. Gugino is not a successor trustee charged with the duty of representing the Pfankuchs' bankruptcy estate. Gugino was trustee of a completely separate bankruptcy estate - the Corporate bankruptcy estate.

Moreover, it is doubtful that Gugino set out to benefit the Pfankuch bankruptcy estate. In performing his services, he was attempting to zealously discharge his duties as a trustee of the Corporate bankruptcy

MEMORANDUM OF DECISION - 12

estate. While it is perhaps unfortunate that he invested time and energy pursuing an asset that ultimately did not bear any fruit to the creditors of the Corporate estate, it was nonetheless his statutory duty to do so.

Gugino also suggests there is an equitable, quantum meruit aspect to the analysis of his administrative expense request. But as this Court has previously instructed that, in a bankruptcy case, the "'equities' of the situation, as viewed by the parties or even by the Court, do not alone control; the equitable powers of the Court can be exercised only insofar as the Code and Rules allow." *In re Cent. Idaho Forest Prods.*, 371 B.R. at 155. Gugino has not shown that the Code allows someone who never served as a trustee in the case in which relief is sought to recover an administrative expense claim under these circumstances. Even were the Court persuaded that the equities favor his position, the Court lacks discretion to create an administrative expense claim where the Code does not provide for one.

MEMORANDUM OF DECISION - 13

*Conclusion*

Because § 503(b)(2) does not apply, Gugino's request for allowance of an administrative expense must be denied.[12] A separate order will be entered.

Dated: November 17, 2008

_____
Honorable Jim D. Pappas
United States Bankruptcy Judge

---

[12] Gugino does not argue he is entitled to an administrative expense under § 503(b)(3)(B), apparently because he concedes neither he nor the chapter 7 estate he represented is "a creditor" in the Pfankuchs' case.

MEMORANDUM OF DECISION - 14